IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |  |
|---|---|---|
| CHARLES MCCOY a/k/a/ CHUCK MCCOY, | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-1638 |
| | ) | Judge Joy Flowers Conti |
| COMMONWEALTH OF PENNSYLVANIA , | ) | Magistrate Judge Lenihan |
| Respondent. | ) | |

## SUPPLEMENTAL REPORT AND RECOMMENDATION

### I.   RECOMMENDATION

It is respectfully recommended that the Petition for Writ of Habeas Corpus be denied and that a certificate of appealability be denied.

### II.   REPORT

Petitioner, Charles McCoy, a prisoner formerly incarcerated at the Allegheny County Jail (ACJ) has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 wherein he complains that he is being unlawfully held in custody in violation of the Pennsylvania Rules of Criminal Procedure as well as the United States Constitution.  For the reasons that follow, Petitioner has failed to state a claim upon which this court can grant habeas corpus relief under 28 U.S.C. § 2241.

A. Relevant Procedural History

Petitioner was convicted of Lewd and Lascivious Conduct in the State of Florida and was placed on probation, effective May 25, 2001.  Pursuant to the Interstate Compact for Adult Offender Supervision Act, Petitioner was transferred to the Commonwealth of Pennsylvania to serve the remainder of his probation sentence on June 19, 2004.  Sometime thereafter, Petitioner violated the terms of his probation and a warrant was issued for Petitioner's detainment on July

19, 2004.  The underlying Warrant from the State of Florida Department of Corrections outlined the specific probation violations; specifically, that Petitioner changed his residence and left his county of residence without the consent of the probation officer (Answer, Ex. 2 doc. no. 10). Petitioner was detained and placed in the ACJ on July 20, 2004 pursuant to the detainer.  A preliminary hearing was held on July 22, 2004 during which Petitioner's probation officer, Agent Richard Novak, informed him of the technical violations.  Objections, p. 3 (doc. no. 16); Reply, p. 2 (doc. no. 19).  On October 7, 2004, 72 days after he first was detained, Petitioner was released to the State of Florida.  On October 26, 2004, Petitioner filed a petition for writ of habeas corpus alleging due process violations and violations of the Pennsylvania extradition and detainer law, 42 Pa. Cons. Stat. §§ 9101 and 9131.

On March 7, 2006, this Court issued a Report and Recommendation recommending that the Petition be denied for failure of the Petitioner to assert any violation of his constitutional rights.  On March 20, 2006, Petitioner filed Objections to the Report and Recommendation in which he asserted specific constitutional due process violations.  On April 7, 2006, the Honorable Joy Flowers Conti issued an order remanding the Petition back to the Magistrate Judge for consideration of Petitioner's due process claims and to file a Report and Recommendation which considers the objections.  On April 17, 2006, Respondent filed a Reply to Petitioner's Objections.  This Supplemental Report and Recommendation addresses the objections filed by Petitioner.

## B. Relevant Principles of Habeas Corpus Review

The provisions of the federal habeas corpus statute at 28 U.S.C. § 2254(b) require a state prisoner to exhaust available state court remedies before seeking federal habeas corpus relief. To comply with the exhaustion requirement, a state prisoner first must have fairly presented his constitutional and federal law issues to all levels of the state courts through direct appeal, collateral review, state *habeas* proceedings, *mandamus* proceedings, or other available procedures for judicial review.  *See, e.g.*, Castille v. Peoples, 489 U.S. 346, 351 (1989); Doctor v. Walters, 96 F.3d 675, 678 (3d Cir. 1996); Burkett v. Love, 89 F.3d 135, 137 (3d Cir. 1996).

It is clear that Petitioner's claims are without merit.  Accordingly, this Court will review Petitioner's claims under the authority granted in 28 U.S.C. § 2254(b)(2), which provides that a federal court may deny a petitioner's claims on the merits notwithstanding a petitioner's failure to comply with the exhaustion requirement.  *See* 28 U.S.C. § 2254(b)(2) (as amended by The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 142 Cong. Rec. H3305-01 (1996).  In so doing, the Court is mindful that the federal courts cannot grant federal habeas corpus relief to state prisoners like the petitioner unless such prisoner is in custody in violation of the United States Constitution or federal law.  *See* 28 U.S.C. § 2254(a).  *See also* Smith v. Phillips, 455 U.S. 209, 221 (1982) ("[Under 28 U.S.C. § 2254] Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension.").  Thus, mere violations of state law or procedural rules cannot provide the basis for federal habeas relief absent a deprivation of constitutional magnitude. Engle v. Isaac, 456 U.S. 107 (1982); Wells v. Petsock, 941 F.2d 253 (3d Cir. 1991), *cert. denied*, 505 U.S. 1223 (1992).

C. Due Process of Law

In Morrissey v. Brewer, 408 U.S. 471 (1972), the Supreme Court set forth the minimum due process requirements that apply to parole revocation proceedings. In so deciding, the Court first noted that, because parole revocation is not part of a criminal prosecution, the full panoply of rights due a defendant in criminal proceedings does not apply to parole revocations. 408 U.S. at 480. In this regard, the court reasoned that "revocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions." *Id*. With these precepts in mind, the Court concluded that the minimum requirements of due process included: 1) written notice of the claimed violations of parole; 2) disclosure to the parolee of evidence against him; 3) an opportunity to be heard in person and to present witnesses and documentary evidence; 4) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); 5) a neutral and detached hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and 6) a written statement by the fact finders as to the evidence relied on and reasons for revoking parole. *Id*. at 489. Because of the absence of an adequate record in the case before it, the Supreme Court remanded the case to the Court of Appeals for its return of the case to the District Court with directions to make findings on the procedures actually followed by the parole board in the two revocations at issue. The Supreme Court further instructed that, if it was determined either that: 1) the petitioners admitted the parole violations; or the procedures followed by the parole board met the minimum due process standards set forth in the Court's opinion; that would dispose of the due process claims for these cases. *Id*. at 490.

In Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973), the United States Supreme Court held that a probationer, like a parolee, is entitled to a preliminary and a final revocation hearing, under the conditions specified in Morrissey v. Brewer.  Specifically, the Court determined that a defendant accused of violating the terms of his probation is entitled to two hearings prior to formal revocation and re-sentencing.  When a parolee or probationer is detained pending a revocation hearing, due process requires a determination at a pre-revocation hearing, a Gagnon I hearing, that probable cause exists to believe that a violation has been committed.  Gagnon, 411 U.S. at 786.  With respect to the preliminary hearing, the parolee should be given notice that the hearing will take place and that its purpose is to determine whether there is probable cause to believe he has committed a parole violation. The notice should state what parole violations have been alleged.  Where a finding of probable cause is made, a second, more comprehensive hearing, a Gagnon II hearing, is required before a final revocation decision can be made.  *Id*.

In the case at bar, Petitioner admits that he received a preliminary hearing on July 22, 2004 where he was informed of the alleged technical probation violations.  He argues that he was denied due process because his preliminary hearing was not held before a judicial officer.  It is abundantly clear, however, that Petitioner received the minimum due process protections afforded to him as the Supreme Court specifically has held that the determination that reasonable grounds exist for revocation of probation need not be made by a judicial officer. Morrissey, at 486. "The granting and revocation of parole are matters traditionally handled by administrative officers." *Id*.  Thus, Petitioner's objection as to this point is without merit.

Petitioner argues that he was detained seventy-two (72) days before he was taken back to Florida, the state that imposed his probation sentence.  The Supreme Court has recognized that:

> [t]here is typically a substantial time lag between the arrest and the
> eventual determination by the parole board whether parole should
> be revoked. Additionally, it may be that the parolee is arrested at a
> place distant from the state institution, to which he may be
> returned before the final decision is made concerning revocation.

Morrissey, 408 U.S. at 485.

Due process requires that a person accused of violating parole or probation receive a revocation hearing "within a reasonable time after [the person] is taken into custody." Morrissey, 408 U.S. at 488. Delay in holding a parole revocation hearing by itself is not a per se violation of due process entitling an inmate to release. *See, e.g.*, McNeal v. United States, 553 F.2d 66, 68 (10th Cir.1977). To determine whether a delay is unreasonable, and therefore, violative of due process, a court must consider: 1) the length of the delay; 2) the reasons for the delay; 3) the alleged violator's attempts to assert the right; and 4) prejudice to the alleged violator. Mercer v. McAninch, 178 F.3d 1295, 1999 WL 115497 (6th Cir. Feb.9, 1999) (citing Hanahan v. Luther, 693 F.2d 629, 634 (7th Cir. 1982), *cert. denied*, 459 U.S. 1170 (1983) (citing Barker v. Wingo, 407 U.S. 514, 530 (1972)); Camacho v. White, 918 F.2d 74, 79 (9th Cir.1990). *See also* Harris v. Day, 649 F.2d 755, 761-62 (10th Cir.1981) (holding that, absent showing of prejudice, delay in holding a revocation hearing does not violate a parolee's due process rights); United States v. Wall, 208 F.3d 204 (Table) (2nd Cir. March 14, 2000) (same).

In the case at bar, Petitioner has not demonstrated that he suffered any "delay" under the applicable statutes and regulations. A probationer is only entitled to be heard on a violation of probation after his arrest and return to the court which granted the probation. Chapman v. State, 910 So. 2d 940 (Fla. Dist. Ct. App. 5th Dist. 2005). When a probationer is arrested pursuant to a

warrant, the provisions of Section 948.06, Fla. Stat. (1977), apply.  Under this section if the probationer does not admit the violation(s), the court may commit him "with or without bail" and must hold a hearing "as soon as may be practicable."  Here, arrangements had to be made to transfer Petitioner back to the State of Florida where his revocation hearing could be conducted.  Petitioner has failed to demonstrate that he suffered any delay, let alone delay that was prejudicial.  It necessarily follows then that he has failed to demonstrate that he suffered any violation of his due process rights with respect to the time he was confined in the ACJ before he was transferred to Florida for his revocation hearing.

Moreover, Petitioner does not challenge the legality of the State of Florida to have issued the detainer seeking his return to Florida to serve the remainder of his sentence.  Rather, he takes issue with the Commonwealth's alleged failure to comply with 42 Pa. Cons. Stat. § 9131, which provides as follows.

> No person arrested upon such warrant shall be delivered over to the agent whom the executive authority demanding him shall have appointed to receive him unless he shall first be taken forthwith before a judge of a court of record in this Commonwealth who shall inform him of the demand made for his surrender and of the crime with which he is charged and that he has the right to demand and procure legal counsel, and, if the prisoner or his counsel shall state that he or they desire to test the legality of his arrest, the judge of such court of record shall fix a reasonable time to be allowed him within which to apply for a writ of habeas corpus.  When such writ is applied for, notice thereof and of the time and place of hearing thereon shall be given to the prosecuting officer of the county in which the arrest is made and in which the accused is in custody and to the said agent of the demanding state.

42 Pa. Cons. Stat. § 9131.

It does not appear that section 9131 is relevant to Petitioner's action as he was detained pursuant to a probation violation, not a new arrest.  Instead, Petitioner's claims are controlled by

the Interstate Compact for the Supervision of Adult Offenders Act, which provides for the "controlled movement of adult parolees and probationers across state lines." *See* 61 P.S. § 324. This Act specifically provides that: "Under this Act, The compacting states recognize that there is no "right" of any offender to live in another state and that duly accredited officers of a sending state may at all times enter a receiving state and there apprehend and retake any offender under supervision subject to the provisions of this compact and Bylaws and Rules promulgated hereunder." 61 P.S. § 324.1.  Moreover, Petitioner signed an Application for Compact Services and Agreement to Return wherein he specifically waived his extradition rights and agreed not to contest any effort by any jurisdiction to return him to the State of Florida.  See Ex. 1, to Commonwealth's Answer.  Consequently, Petitioner has failed to show that he is entitled to habeas corpus relief with respect to his claim of illegal detention in Pennsylvania.

### D. Certificate of Appealability

The Antiterrorism and Effective Death Penalty Act of 1996 included several major reforms to the federal habeas corpus laws.  Section 102 of the Act (28 U.S.C. § 2253(c) (as amended)) codifies standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition.  Amended section 2253 provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  In the case at bar, Petitioner has not made any showing that he has been denied any of his constitutional rights.  Accordingly, a certificate of appealability should be denied.

**III.    CONCLUSION**

It is recommended that the Petition for Writ of Habeas Corpus be denied and that a certificate of appealability be denied.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates, the parties are allowed ten (10) days from the date of service to file objections to this report and recommendation.  Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto.  Failure to file timely objections may constitute a waiver of any appellate rights.

      /s/Lisa Pupo Lenihan
Lisa Pupo Lenihan
U.S. Magistrate Judge

Dated: May 17, 2006


cc:    The Honorable Joy Flowers Conti
       United States District Judge

       Charles McCoy
       X29094
       Mayo Correctional Institution
       8784 US Highway, 27 West
       Mayo, FL 32066

       Rusheen R. Pettit, Office of the District Attorney
       401 Allegheny County Courthouse
       Pittsburgh, PA 15219